THE HONORABLE ROBERT S. LASNIK

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

11

12

13

14

15

16

| | |
|---|---|
| RICHARD JAMES DIDZUN, an individual; IAN McANDREWS and KATE McANDREWS, individually and for their marital community; on behalf of themselves and persons similarly situated;<br><br>                    Plaintiffs,<br><br>     v.<br><br>THE HOME DEPOT, INC., a foreign corporation, and HOME DEPOT USA, INC.;<br><br>                  Defendants. | No. 2:21-cv-01540 RSL<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**NOTING DATE: June 7, 2024** |

17

18

### I. RELIEF REQUESTED.

19

20

Plaintiffs Richard Didzun, Ian McAndrews, and Kate McAndrews (collectively, "Plaintiffs") move the Court to: (1) grant preliminary approval, (2) certify the proposed *Didzun* Class for purposes of settlement, (3) appoint Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel, (4) authorize distribution of settlement notices, and (5) schedule a final approval hearing.

21

22

23

24

25

26

The Plaintiffs seek preliminary certification of the following class:

All hourly associate employees of the Home Depot U.S.A., Inc., in the State of Washington between August 22, 2018, and the date of an order approving this Motion, excluding associates who only held only Specialist or Supervisor

positions during this period, or were eligible to participate in the settlement of the action titled *Carlson v. Home Depot U.S.A., Inc., et al.*

Plaintiffs believe the proposed settlement is a fair, reasonable, and adequate compromise, and respectfully request the Court grant preliminary approval.

## II. INTRODUCTION.

This is a putative class action brought by current and former hourly associate employees of Home Depot. In the lawsuit, the Plaintiffs allege that Home Depot violated Washington Administrative Code §296-126-092, as well as the Minimum Wage Act (RCW 49.46) and Wage Rebate Act (RCW 49.52), by failing to provide timely meal periods and rest breaks. Home Depot denies all liability, denies the allegations in the lawsuit, and denies that it failed to provide lawful meals and rest periods. Home Depot also disputes Plaintiffs' assertion that a class would or should be certified in this matter if litigation were to continue.

Following extensive pre-certification discovery and analysis, the Parties agreed to participate in mediation. In June 2023, the Parties completed a full-day mediation and after almost two dozen offers and counteroffers, and ultimately agreed on a gross settlement fund of nine million, five hundred thousand dollars ($9,500,000). After mediation, the Parties spent several months negotiating various details and non-monetary terms, all of which Plaintiffs negotiated for the benefit of Class Members. In March 2024, the Parties executed a comprehensive Joint Stipulation of Class Action Settlement (the "Settlement"). *See* Declaration of Mark Trivett, Ex. 1.

The proposed Settlement allows Class Members to receive monetary damages for allegedly missed and untimely periods identified from timekeeping records, and additional damages for allegedly missed rest periods based on the number of shifts worked during the Class Period. The recovery for each Class Member is individualized and directly proportionate

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 2
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

to their alleged damages. Further, Home Depot has implemented policy changes meant to automatically compensate employees for missed and untimely meal periods going forward.

As result of this lawsuit and other policy changes, Class Members will receive substantial monetary compensation, and present and future Home Depot employees will be automatically compensated for potentially missed or untimely meal periods.

## III. STATEMENT OF FACTS.

### A. Regulatory Posture.

Meal and rest periods for hourly employees in Washington State have been governed by WAC §296-126-092. That regulation provides in relevant part:

(1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.

(2) No employee shall be required to work more than five consecutive hours without a meal period.

(3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.

WAC §296-126-092(1-3).

### B. Procedural Posture.

This action was filed on August 27, 2021, in Snohomish County Superior Court. Dkt. #1-1. On November 12, 2021, it was removed to this jurisdiction under the Class Action Fairness Act ("CAFA"). Dkt. #1.

In May 2022, Home Depot produced timekeeping records and payroll records for all putative Class Members. Trivett Dec., ¶2-4. In July 2022, Plaintiffs' Counsel retained Aaron Mitchell of Maderas Partners, LLC, to serve as a litigation expert and to analyze Home Depot's

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 3
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

data. *Id.*, ¶5. Plaintiffs' Counsel had previously worked with Mr. Mitchell on other wage and hour class actions when he was employed as a data analyst by Dr. Paul Torelli. *Id.* Plaintiffs requested that Mr. Mitchell review and analyze Home Depot's data in order to identify the putative number of Class Members, and ascertain the potential damages associated with missed or untimely meal periods, as well as potential missed rest periods. *Id.*

After completing this analysis, Plaintiffs began preparing materials to move for class certification. *Id.*, ¶7. While resolving discovery issues related to class certification, the Parties agreed to participate in pre-certification mediation, which was subsequently scheduled for June 2023. *Id.*

**C.  Settlement Posture.**

Prior to mediation, Plaintiffs disclosed to Home Depot their calculations of Home Depot's potential damages. *Id*, ¶9.

On June 15, 2023, the Parties mediated the dispute with Lou Peterson. *Id.*, ¶12. During the mediation, the Parties exchanged approximately twenty-three (23) offers of settlement, before ultimately agreeing on a gross settlement value of nine million five hundred thousand dollars at 5:25 p.m. *Id.*

Within days, it became clear that although the Parties agreed on a gross settlement value, they disagreed on a number of non-monetary terms including the details regarding proposed measures to confirm the efficacy of Home Depot's new automatic reimbursement payroll policy, under which Home Depot's associates are compensated in the ordinary course of business for potentially missed or non-compliant breaks. *Id.*, ¶13-14. Over the next few months, the Parties exchanged multiple versions of the draft Memorandum of Agreement, before

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 4
No. 2:21-cv-01540 RSL

eventually reaching agreement on December 19, 2023. *Id*. On March 8, 2024, the Parties executed a comprehensive longform settlement agreement. *Id*., ¶15 & Ex. 1.

A central issue in the parties' negotiations concerned the implementation by Home Depot, on July 11, 2022, of a new timekeeping policy which is intended to promptly pay employees for wages associated with potentially missed or untimely meal periods. *Id*., ¶9. As part of the settlement, Plaintiffs negotiated the right to obtain and review timekeeping and payment data for the period after this policy's implementation, in order to ensure its efficacy. *Id*., ¶10. In fact, the filing of this Motion for Preliminary Approval was contingent on Plaintiffs first verifying the purported efficacy of this Home Depot policy. After execution of the MOA in December 2023, and in accordance with the terms of that MOA, Home Depot provided Plaintiffs with additional payroll and timekeeping data to facilitate this verification. *Id*., ¶17. Again, Plaintiffs' economics expert, Mr. Mitchell, analyzed this data and identified wage reimbursements in over 169,000 instances, and confirmed that Home Depot's corrective pay policy was more than 97% effective. *Id*.

**D. Terms of the Proposed Settlement.**

The terms of the Parties' proposed settlement are contained within the Settlement Agreement. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

**1. The Settlement Class.**

The proposed Settlement Class is defined as follows:

All hourly associate employees of the Home Depot U.S.A., Inc., in the State of Washington between August 22, 2018 and the date of an order approving this Motion, excluding associates who held only Specialist or Supervisor positions during this period, or were eligible to participate in the settlement of the action titled *Carlson v. Home Depot U.S.A., Inc., et al*.

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 5
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*See* Trivett Dec., Ex. 1, pg. 3, ¶F (longform definition). According to Home Depot's timekeeping and payroll data, approximately 32,532 individuals fall within the Settlement Class. *Id*., ¶18.

### 2. Financial Consideration and Release.

Under the terms of the Settlement, Home Depot will pay a total of $9,500,000, which will constitute a non-revertible common fund. *Id*., Ex. 1, pg. 5, ¶V. This represents approximately 84.8% of wages allegedly associated with purported missed and untimely meal periods. Trivett Dec., ¶16. In consideration of Home Depot's payment, the Settlement Class Members shall release Home Depot, its employees, and affiliated entities from:

> all causes of action and factual or legal theories that were alleged in the operative complaint or reasonably could have been alleged based on the facts and legal theories contained in the operative complaint, including all of the following claims for relief against the Released Parties: (1) meal and rest break violations; (2) failure to track or provide compensation for meal and rest break violations; (3) withholding and/or underpayment of wages relating to or arising out of meal and rest break violations; (4) falsification of payroll and timekeeping records; (5) unjust enrichment in connection with purported meal or rest break violations; (6) all other claims or penalties under the wage and hour laws pleaded in the Action; and all damages, penalties, interest, attorneys' fees and costs, and other amounts recoverable under said causes of action under Washington and federal law, including the Washington Minimum Wage Act and the Washington Industrial Welfare Act, to the extent arising out of or relating to the facts and legal theories alleged in or that reasonably could have been alleged based on the facts and legal theories contained in the operative complaint.

*Id*., Ex. 1, pg. 7-8, ¶FF. The Class Representatives are individually providing general releases under which they (but not the Settlement Class Members) are releasing all claims of any kind against Home Depot, its employees and affiliated entities. *Id*., pg. 13, ¶F.

Class Counsel proposes that Simpluris shall serve as the Settlement Administrator to prepare and distribute notice of the Settlement, and to receive and report opt-outs and to distribute settlement funds. *Id*., ¶22.

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 6
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Upon final approval by the Court, the Settlement Administrator will prepare and distribute settlement checks to each Class Member, which will represent their pro rata allocation after deductions for Court-approved attorney's fees and costs, and incentive awards. *Id*., Ex. 1, pg. 25, ¶P. Class Members shall be allocated a percentage share of the net settlement proceeds based on the number of potentially missed or untimely meal periods reflected in their personal payroll data, and the number of shifts they worked during the Class period. *Id*., pg. 27, ¶P(2)(b). Class Members are expected to receive gross allocations equal to 72% of their potential wages associated with purportedly missed or untimely meal breaks, and additional allocations for purportedly missed rest periods. Trivett Dec., ¶16. Checks will be effective for 180 days, and Class Members can ask they be re-issued. Trivett Dec., Ex. 1, pg. 28-29, ¶P(2)(e-g). Individual settlement awards will be divided equally between back wages (50%) and prejudgment interest and penalties (50%). *Id*., pg. 26, ¶P(2)(b). Settlement Class Members will not need to submit claims or any documentation to receive their individual settlement awards. After that period, all uncashed checks and residuals will be deposited with the Washington State Unclaimed Property Fund in the name of individual Class Membrs. *Id*., ¶P(2)(g). **No funds will revert to Home Depot**. *Id*.

### 3. The Notice Program.

The Parties also propose a notice program in which the Settlement Administrator will issue: (1) send individual notice of the settlement by first-class mail and e-mail (where available) to members of the Settlement Class; and (2) process and track opt-opt requests. The proposed Notice of Class Action Settlement is attached as Exhibit Two to the Declaration of Mark Trivett.

**4.  Class Representatives' Incentive Awards.**

The Class Representatives hereby ask the Court to approve individual service awards of ten thousand dollars ($10,000) to be paid from the common fund. Trivett Dec., Ex. 1, pg. 28-29, ¶P(3). These awards are intended to compensate the Class Representatives for their time and effort in prosecuting this litigation and helping secure the Settlement. Trivett Dec., ¶20. The enforceability of the Settlement is not contingent on the Court's approval of the service award in the amount sought by the Class Representatives.

**5.  Attorney's Fees and Costs.**

Class Counsel will ask the Court for an award of attorney's fees amounting to no more than $2,375,000, equal to twenty-five percent (25%) of the gross settlement, and reimbursement for out-of-pocket litigation costs, which are estimated to be less than $30,000. Class Counsel will provide an accounting of the costs prior to final approval.

**6.  Administration Costs**

Administrative expenses will be paid from the common fund. Subject to the Court's approval, the Class proposes Simpluris as Settlement Administrator. Because over 32,000 putative Settlement Class Members would receive notice by U.S. Mail, and checks would be distributed in the same fashion, there is a substantial printing and postage cost. For this reason, Class Counsel estimates administration costs will be at or near $125,000.

**E.  Considerations in Reaching Settlement.**

The common fund of $9,500,000 represents approximately 84.8% of wages associated with allegedly missed or untimely meal periods. This negotiated settlement considers multiple contingencies and risks: (1) the possibility that the Court would not certify the *Didzun* Class, (2) the possibility that the Plaintiffs would be unable to establish that missed or untimely meals

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 8
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

constitute a common practice or policy at Home Depot, (3) the possibility that Class Members would be unable to prove damages for missed rest periods, given that no class-wide data exists to identify instances when this occurred, (4) that the facts underlying Plaintiffs employment and claims would be found to be atypical. The Parties articulated their opposing views on these topics both before and during the lengthy mediation. Trivett Dec., ¶10-15.

Class Counsel also considered the outcome of similar litigations on this topic, including *Carlson v. Home Depot USA, Inc*., Case No. #2:20-cv-01150-MJP. In *Carlson*, the plaintiffs alleged similar claims on behalf of supervisory and specialist employees of Home Depot in Washington. From publicly available filings, it appears the *Carlson* parties negotiated a settlement which provided a gross recovery equal to approximately 75% of actual purported meal and rest period damages. *Carlson*, Dkt. #135, pg. 13. Here, the proposed Settlement encompasses a much larger Class, and provides for gross recovery equal to roughly 84.8% of estimated meal damages.

By any measure, the proposed settlement is the result of contentious arm's length negotiations. The Parties had performed intensive discovery and analysis of prospective outcomes and liabilities, and although each presented diametrically opposing viewpoints, were ultimately able to reach a compromise. The Parties believe that this compromise, embodied within the presented Settlement is a fair and reasonable outcome for this litigation.

## IV. DISCUSSION.

### A. The Settlement Approval Process.

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 9
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. Updated 2015) (citing cases).  Here, the proposed Settlement is the best vehicle for the Class Members to receive the relief to which they may be entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected settlement class members; and (3) a "fairness hearing" or "final approval hearing," at which settlement class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 432–34 (2014).  This procedure safeguards settlement class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  *See* Newberg § 13.1.

With this motion, the Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement.  The purpose of the preliminary evaluation is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the settlement class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.  Newberg § 13.13. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil*

*Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)). The Court's grant of preliminary approval

will allow the Settlement Class to receive direct notice of the Settlement Agreement's terms,

and the date and time of the Final Approval Hearing, at which Settlement Class Members may

be heard regarding the Settlement Agreement, and at which time further evidence and argument

concerning the settlement's fairness, adequacy, and reasonableness may be presented. *See* MCL

4th § 21.634.

**B.  The Criteria for Settlement Approval Are Satisfied.**

The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-

collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

2009).  To assess a settlement proposal, courts must balance the strength of the Plaintiffs' case;

the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining

class action status throughout the trial; the amount offered in settlement; the extent of discovery

completed and the state of the proceedings; the experience and views of counsel; and the

reaction of the class members to the proposed settlement. *In re Online DVD-Rental Antitrust

Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015); *McKinney-Drobnis v.

Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (listing factors from the 2018 amendments to

FRCP 23 as "(A) the class representatives and class counsel have adequately represented the

class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (D) the proposal treats class members equitably relative to each other.").

1. **The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations.**

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*, 779 F.3d at 944 (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2010)).

The Settlement is the result of extensive, arm's-length negotiations between experienced attorneys for both parties who are competent practitioners in class action litigation in general and with the legal and factual issues of this case. *See* Declaration of Mark Trivett, ¶23-28.

2. **The Settlement is Fair and Reasonable In Light of the Alleged Claims and Potential Defenses.**

The Amended Complaint alleges claims for violation of the Washington Wage Rebate Act (RCW 49.52) and WAC §296-126-092, the Fair Standards Labor Act, unjust enrichment and declaratory relief. Dkt. #13, pg. 11. The Amended Complaint also sought prejudgment interest, exemplary damages, and attorney's fees and costs. Dkt. #13.

Although this case was settled before the ultimate issues of class certification, liability, and damages were decided, Home Depot demonstrated its intent to contest this litigation. Further, it can be argued that because the Class Representatives only worked at a small number of Home Depot locations in Washington, they would be unable to testify about practices at other locations or seek relief for their respective employees. Home Depot also argued that their written policies expressly directed associates to take scheduled meal and rest periods. As to rest

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 12
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

periods, there was no class-wide data, and Plaintiffs would have been forced to conduct and rely on a post-certification survey of class members. All of these arguments, as well as Home Depot's litigation posture, posed potential risks.

### 3. The Settlement Provides Substantial Relief and Treats All Settlement Class Members Fairly.

As previously described, the Settlement provides that Class Members will receive direct distribution of net settlement proceeds via U.S. Mail and will have up to 180 days to claim their check or obtain a replacement. Trivett Dec., Ex. 1, pg. 29, ¶P(2)(g). The proposed allocation plan has three variables: (1) the number of missed or untimely meals for each Class Member, (2) the number of shifts worked by each Class Member, and (3) individual wage of that Class Member. *Id.*, pg. 26, ¶P(2)(b). This distribution scheme ensures that each Class Member receives an allocation equitably proportionate to the work they performed, and their wages during the Class Period.  After deductions for attorney's fees and incentive awards, and estimated administrative expenses, the net average recovery is expected to be nearly **$214.**

The Settlement also provides that any undistributed funds will be transferred to the Washington State Unclaimed Property Fund, where they can be claimed for years to come. *Id.*, ¶P(2)(g).

Finally, the Settlement provides that Class Counsel and the Representatives will be paid at the same time as Class Members, ensuring an equitable timeline for distribution. *Id.*, ¶P(3-4). Both the monetary and non-monetary terms of the proposed Settlement are highly favorable to Class Members and ensure that both notice and proceed distribution will be effective.

### 4. Class Counsel's Requested Fees Are Reasonable.

Class Counsel will seek an award of up to $2,375,000, which is equal to 25% of the common fund. *Id*. The Ninth Circuit has approved two methods for calculating attorneys' fees

depending on the circumstances: the lodestar method and the percentage-of-recovery method.
Under the lodestar method, the prevailing attorneys are awarded an amount calculated by
multiplying the hours they reasonably expended on the litigation by their reasonable hourly
rates. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). "Under the percentage-of-
recovery method, the attorneys' fees equal some percentage of the common settlement fund…"
*In re Online DVD*, 779 F.3d at 949. Regardless of the method, "courts have an independent
obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth*,
654 F.3d at 941.

The benchmark award is 25% of the common fund or gross recovery. *Hanlon v.
Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998). This is precisely Class Counsels'
maximum request, and they believe this percentage is justified based on their view that this
settlement provides substantial benefit for Class Members, and the labor which achieved the
proposed Settlement. Trivett Dec., ¶2-22.

While Class Counsel were confident in their ability to succeed at certification and trial,
success was by no means guaranteed, especially considering the complexity of the issues
involved. Because Plaintiffs' Counsel agreed to prosecute this case on a contingency basis with
no guarantee of ever being paid, they have faced a substantial risk over the last few years.

Prior to final approval, Plaintiffs' Counsel will file a separate motion for an award of
attorney's fees and costs, addressing in greater detail the facts and law supporting their fee
request in light of all of the relevant facts.

### 5. The Requested Service Award Is Reasonable.

 "[I]ncentive awards that are intended to compensate class representatives for work
 undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*,
779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir.

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 14
No. 2:21-cv-01540 RSL

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

2009)).  Incentive or service awards are generally approved so long as the awards are

reasonable and do not undermine the adequacy of the class representatives.  *See Radcliffe v.*

*Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding service award must

not "corrupt the settlement by undermining the adequacy of the class representatives and

class counsel").  For example, if a settlement explicitly conditions a service award on the

class representative's support for the settlement, the service award is improper.  *See id.*  By

contrast, where a settlement "provide[s] no guarantee that the class representatives would

receive incentive payments, leaving that decision to later discretion of the district court," a

service award may be appropriate."  *In re Online DVD*, 779 F.3d at 943.

Here, the Class Representatives individually request service awards of $10,000, or an

amount the Court deems appropriate. This value reflects the Class Representatives'

participation, including deposition, and their assistance with discovery, and advocacy on behalf

of their fellow Class Members. Trivett Dec., ¶20. Class Representatives' support of the

Settlement is independent of any service award and not conditioned on the Court awarding any

particular amount or any award at all, in stark contrast to *Radcliffe*.  Thus, the named Plaintiffs'

adequacy as class representatives is unaffected by an appropriate service award that recognizes

their efforts and contributions to the case.

### 6.  The Proposed Notice Program Is Constitutionally Sound.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class

members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also*

MCL 4th § 21.312.  The best practicable notice is that which is "reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*,

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 15
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, a settlement

notice should do the following:

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representative;
- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed form of notice, attached as Exhibit Two to Mr. Trivett's declaration, satisfies

all of the above criteria. The proposed Notice is clear, straightforward, and provides

persons in the Settlement Class with enough information to evaluate whether to participate

in the settlement. Thus, the Notice satisfies the requirements of Rule 23. *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must

provide settlement class members with an opportunity to present their objections to the

settlement).

The Administrator will send Notice (Trivett Dec., Ex. Two) by U.S. Mail and by e-mail

(where available) to all Class Members. Trivett Dec., Ex. One, ¶O(3). This notice provides

information to Class Members about relevant deadlines and prospective allocations, as well as

instructions for attending the final approval hearing, objecting, or opting out. Trivett Dec., Ex.

Two. All in all, the Notice Program constitutes the best notice practicable under the

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 16
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the

requirements of due process and Rule 23.

**C.  The Rule 23(a) Factors Are Met for Settlement Purposes.**

**1.  Numerosity.**

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all

members is impracticable.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)

(quoting Fed. R. Civ. P. 23(a)(1)).  "It is a long-standing rule that 'impractical' does not mean

'impossible' rather, impracticality means only 'the difficulty or inconvenience of joining all

members of the class.'" *McClusky v. Trustees of Red Dot*, 268 F.R.D. 670, 673 (W.D. Wash.

2010).  The Settlement Class herein includes at least over 32,000 employees, rendering joinder

impracticable.  *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,

268 F.R.D. 670, 674 (W.D. Wash. 2010).

**2.  Commonality.**

The commonality requirement of Rule 23(a)(2) is satisfied because the questions of law

common to the Settlement Class are, in fact, identical, and the questions of fact address merely

each individual employee's claim, and the answers to these questions are all derived from a

common database.  Because persons in the Settlement Class here all allegedly suffered the same

injury and are generally subject to the same defenses, commonality is satisfied for settlement

purposes.

**3.  Typicality.**

"Typicality refers to the nature of the claim or defense of the class representative, and

not to the specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp.*,

976 F.2d 497, 508 (9th Cir. 1992).  "[R]epresentative claims are typical if they are reasonably

co-extensive with those of absent class members; they need not be substantially identical."

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 17
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

*Hanlon*, 150 F.3d at 1020.  Here, the proposed Class Representatives were employees of Home Depot and their payroll/timekeeping data shows that they experienced missed or untimely meal periods. Further, all of the Plaintiffs testified to experiencing missed rest periods. The Plaintiffs assert no claims separate and distinct from their fellow Settlement Class Members. Because Plaintiffs' claims arise from the same course of conduct that allegedly affected all Settlement Class Members, typicality is satisfied for settlement purposes.

### 4.  Adequacy of Representation.

Adequacy requires the representative of a class to provide fair and adequate representation of the class.  Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020). In the context of a class settlement, examination of potential conflicts of interest "is especially critical." *In re Online DVD*, 779 F.3d at 942 (internal marks and quotation omitted).  That said, courts will not deny class certification on the basis of "speculative" or "trivial" conflicts.  *See id.* (finding settlement class representatives adequate and overruling objection that proposed $5,000 service award created a conflict of interest).

Plaintiffs have no interests that are antagonistic to or in conflict with persons in the Settlement Class they seek to represent. They suffered the same alleged wage violations and resulting harm that all persons in the Settlement Class allegedly suffered.  Class Counsel are active practitioners with substantial experience in wage and hour, and class action litigation, including cases very similar to this one.  *See* Trivett Decl. ¶¶23-29.  The requirements of Rule 23(a) are satisfied for settlement purposes.

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 18
No. 2:21-cv-01540 RSL

**D.  The Rule 23(b)(3) Factors Are Satisfied for Settlement Purposes.**

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  The predominance inquiry measures the relative weight of the common questions.  *Amchem*, 521 U.S. at 624.  Common issues predominate here for settlement purposes because the central liability question in this case, whether Home Depot is liable for allegedly missed or untimely meal periods, and missed rest periods, is the only issue, and it applies to all Settlement Class Members.

Because the claims are being certified for purposes of settlement, there are no issues with manageability.  *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial.").  Additionally, resolution of over thirty thousand claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See Id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  Certification for purposes of settlement is appropriate.

**E.  Scheduling a Final Approval Hearing Is Appropriate.**

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement and offer argument in support of final approval.  The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 19
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

order and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, approximately 120-150 days after entry of an order preliminarily approving the settlement.  If the Court preliminarily approves the settlement in May 2024, the final approval hearing should be scheduled in November 2024.  Plaintiffs also request that the Court schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Mailing Date | Within 28 days following entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 45 days after Notice Mailing Date |
| Administrator's Report of Exclusion Requests | 60 days after Notice Mailing Date |
| Plaintiffs' Counsel's Fee Motion Submitted | 30 days after Exclusion/Objection Deadline |
| Final Approval Brief and Response to Objections | 30 days after Exclusion/Objection Deadline |
| Final Approval Hearing / Noting Date | Between 120-150 days of entry of the Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

## V. CONCLUSION.

For the foregoing reasons, the Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) approve the proposed notice plan; (3) appoint Simpluris to serve as administrator; and (4) schedule the final fairness hearing and related dates.

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 20
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**DATED**: May 10th, 2024

*I certify that this memorandum contains 5657 words, in compliance with the Local Civil Rules.*

**BADGLEY MULLINS TURNER PLLC**
*/s/Mark A. Trivett*
Mark A. Trivett, WSBA No. 46375
Duncan C. Turner, WSBA No. 20597
19929 Ballinger Way NE, Ste. 200
Seattle, WA 98155
T: (206) 621-6566
E: dturner@badgleymullins.com;
mtrivett@badgleymullins.com

**NORTHSHORE LAW GROUP, PLLC**
*/s/Abel M. Tsegga*
Abel M. Tsegga, WSBA No. 46349
144 Railroad Ave. Ste. 308
Edmonds, WA 98020
Telephone: (206) 697-4878
Facsimile:   (206) 512-1106
Email: abel@northshorelawgroup.com

***Attorneys for Plaintiffs***

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 21
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Yonten Dorjee*
Yonten Dorjee, Paralegal
**BADGLEY MULLINS TURNER PLLC**
Email:  ydorjee@badgleymullins.com

MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT - 22
No. 2:21-cv-01540 RSL

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686